UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| STEVEN MOORE, ET AL. | CIVIL ACTION |
| VERSUS | |
| HOME DEPOT USA, INC., ET AL. | NO.: 16-00810-BAJ-RLB |

RULING AND ORDER

Before the Court are **Cross-Motions for Summary Judgment (Docs. 153, 221, 232)** filed by Depositors Insurance Company ("Depositors") and Home Depot USA, Inc. ("Home Depot"). For the reasons that follow, Depositors' **Motions for Summary Judgment (Docs. 153, 221)** are **DENIED** and Home Depot's **Motion for Summary Judgment (Doc. 232)** is **GRANTED**.

I. BACKGROUND

This dispute arises from a project to install rooftop air-conditioning units at a Home Depot store. (Docs. 1-2, 50). Steven Moore was electrocuted by a power line owned by Entergy Louisiana, LLC ("Entergy") as he unloaded air-conditioning supplies for Commercial Coolants, Inc. ("Commercial Coolants") to install. (*Id.*) Moore and his wife sued Home Depot, Entergy, Commercial Coolants and others involved in the project. (*Id.*).

At issue on summary judgment are duties of defense and indemnity Home Depot contends that Commercial Coolants' insurer—Depositors—owes Home Depot

1

as an additional insured under a blanket additional-insured endorsement in a commercial general liability policy that Depositors issued to Commercial Coolants. (Docs. 153, 221, 232). The undisputed facts follow.

In 2010, Home Depot and Commercial Coolants entered into a Maintenance Services Agreement ("MSA"). (Docs. 221-7, ¶ 3; 232-2, ¶ 4). The MSA requires Commercial Coolants to "provide materials, equipment, tools, and labor to perform" services described in future work orders. (Docs. 221-1, p. 1; 233-6, p. 1). It contains an indemnification provision:

> **7.0 Indemnification.** Contractor ("Indemnitor") shall indemnify, defend, and hold harmless Home Depot, its parent, affiliates, subsidiaries, officers, employees, and agents ("Indemnitees") from and against any and all claims, lawsuits, judgments, losses, product recalls, and civil penalties for actions, liabilities, damages, costs, and expenses, including attorney's fees and court costs, arising out of or related to (a) the death of or injury to any person (including any employee or agent of Contractor) or property damage which resulted or is alleged to have resulted from any acts or omissions of Contractor, its employees and agents, subcontractors and/or any other persons for whose conduct it may be or is alleged to be legally responsible[.]

(Docs. 221-1, p. 3; 233-6, p. 3).

The MSA also contains a provision that requires Commercial Coolants to obtain insurance naming Home Depot as an additional insured:

> **8.1 Required Coverage.** During the term of this agreement, including any applicable warranty period, Contractor agrees to maintain, at Contractor's sole cost and expense, the following insurance coverage: . . . (c) Commercial General Liability Insurance, on an occurrence basis, naming Home Depot as an additional insured, with a combined single limit of liability for bodily injury (including, without limitation, death) and property damage of not less than $2,000,000 per each occurrence, and in the aggregate not less than $5,000,000[.]

(Docs. 221-1, p. 3; 233-6, p. 3).

In 2015, Home Depot accepted Commercial Coolants' bid to complete an "HVAC replacement project" at the Home Depot store located at 18139 Highland Road, Baton Rouge, Louisiana 70810.[1] (Doc. 221-4). The project called for Commercial Coolants to remove and replace 17 rooftop air-conditioning units. (Doc. 233-8). As part of the project, on November 2, 2015, Steven Moore delivered air-conditioning supplies to the Home Depot store. (Docs. 232-2, p. 1; 266-1, p. 1). As Moore unloaded the supplies, he touched an overhead power line. (*Id.*). This litigation followed. (Docs. 1-2, 50).

Plaintiffs originally sued in the 19th Judicial District Court for the Parish of East Baton Rouge, and Plaintiffs originally named only Home Depot and Entergy as Defendants. (*Id.*). Plaintiffs' Original Complaint alleges that Steven Moore arrived at the Home Depot store before it opened, when a Home Depot employee told Moore to park near a low-hanging power line. (Doc. 1-2, ¶ 4). The Original Complaint alleges that Moore complied and was electrocuted by Entergy's power line. (*Id.* at ¶ 7). And the Original Complaint concludes that Home Depot's and Entergy's negligent failure to maintain the power line and to warn Steven Moore of its unsafe condition caused Moore's electrocution. (Doc. 1-2, ¶¶ 10-11).

Home Depot removed the suit based on diversity jurisdiction. (Doc. 1). Entergy then filed a Crossclaim (Doc. 9) against Home Depot and a Third-Party Demand (Doc.

---

[1] Home Depot asserts—without basis—that this fact is disputed. (Doc. 264-1, p. 3). Commercial Coolants' responses to Depositors' fourth and fifth requests for admission support Depositors' assertion that Home Depot accepted Commercial Coolants' bid. (Doc. 221-4, p. 2). Because Home Depot offers no summary judgment evidence to controvert Depositors' assertion of the fact, the Court deems it undisputed. *See* FED. R. CIV. P. 56(e)(2).

3

37) against Commercial Coolants, alleging that Home Depot and Commercial Coolants violated the Louisiana Overhead Power Line Safety Act. *See* LA. REV. STAT. §§ 45:141-146. Plaintiffs, in turn, amended their Complaint to add Commercial Coolants as a Defendant. (Doc. 50, ¶ 1).

In the Amended Complaint, Plaintiffs allege that Commercial Coolants negligently failed to "(a) provide Plaintiff a safe place to prepare and unload the HVAC system on the trailer; (b) ensure that the location to park the Moore vehicle was a safe and secure area; and (c) properly supervise the safe delivery and unloading of the HVAC system." (Doc. 50, ¶ 11-4). Plaintiffs also allege a direct-action claim against Depositors under LA. REV. STAT. § 22:1269. (*Id.* at ¶ 11-5).

Depositors answered the Amended Complaint and crossclaimed against Home Depot. (Doc. 68). Depositors' Crossclaim invokes Louisiana's anti-indemnity statute for construction contracts, LA. REV. STAT. § 9:2780.1, and asks the Court to declare that Depositors need not defend or indemnify Home Depot as an additional insured under the commercial general liability policy Depositors issued to Commercial Coolants. (*Id.* at p. 16). In response, Home Depot counterclaimed against Depositors for penalties, damages, attorneys' fees, and a declaration that Depositors owes it defense and indemnity. (Doc. 104, p. 12).

Recall that § 8.1 of the MSA required Commercial Coolants to obtain commercial general liability insurance naming Home Depot as an additional insured. (Docs. 221-1, p. 3; 233-6, p. 3). Commercial Coolants did not do so — at least not with respect to the policy in effect at the time Steven Moore alleges he was injured. (Doc.

4

232-2, ¶ 9; 266-1, ¶ 9). Commercial Coolants did, however, obtain a Depositors commercial general liability policy containing this blanket additional-insured endorsement:

> **A. Section II – Who Is An Insured** is amended to include as an insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement. The written contract or written agreement must be:
>
> 1. Valid and legally enforceable;
> 2. Currently in effect or becoming effective during the term of this policy; and
> 3. Executed prior to an "occurrence" resulting in "bodily injury," "property damage," or "personal and advertising injury."
>
> \* \* \*
>
> **B.** The insurance provided to the additional insured is further limited as follows:
>
> 1. That person or organization is an additional insured, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" for the additional insured which is the subject of the written contract or written agreement.

(Depositors policy number ACP GLDO 7263711891).[2]

Pointing to the blanket additional-insured endorsement, Home Depot argues that Depositors owes it a defense because (1) the MSA is a "valid and legally enforceable" contract that required Commercial Coolants to add Home Depot as an additional insured, and (2) Plaintiffs and Entergy have sued Home Depot alleging "bodily injury" or "property damage" that was "caused, in whole or in part, by"

---

[2] Commercial Coolants is also a named insured under Depositors commercial umbrella liability policy number ACP CAD 7263711891. (Doc. 153-2, p. 12). The commercial umbrella liability policy does not extend coverage to parties qualifying as additional insureds under the commercial general liability policy. (Doc. 153-2, p. 29).

5

Commercial Coolants' work on the project. (Doc. 232-1, p. 6). Depositors rejoins that it owes neither defense nor indemnity because the indemnity and additional-insurance provisions of the MSA are void under an anti-indemnity statute. (Doc. 266, p. 2).

Now, the parties cross-move for summary judgment on Depositors' duties of defense and indemnity to Home Depot. (Docs. 153, 221, 232).

## II. LEGAL STANDARD

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). On cross-motions for summary judgment, the Court views each motion separately and asks, as to each, whether the movant has met the Rule 56(a) standard. *Shaw Constructors v. ICF Kaiser Engr's, Inc.*, 395 F.3d 533, 538-39 (5th Cir. 2004).

## III. CHOICE OF LAW

The Court's jurisdiction is based on diversity of citizenship, so the Court applies Louisiana's substantive law. *Boyett v. Redland Ins. Co.*, 741 F.3d 604, 607 (5th Cir. 2014) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Because Louisiana's choice-of-law rules are substantive, the Court applies them here. *Weber v. PACT XPP Tech., AG*, 811 F.3d 758, 770 (5th Cir. 2016) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)).

The first step under Louisiana's choice-of-law regime is to determine whether the laws of two or more states conflict. *Lonzo v. Lonzo*, 2017-0549, p.12 (La. Ct. App. 4th Cir. 11/15/17); 231 So. 3d 957, 966. If the laws do not conflict, the Court applies forum law. *Am. Elec. Power Co. v. Affiliated FM Ins. Co.*, 556 F.3d 282, 285 n.2 (5th Cir. 2009). The parties have not identified a conflict, and the Court has not found one.[3] Thus, the Court applies Louisiana's substantive law.

## IV. DISCUSSION

### A. Depositors' Motions for Summary Judgment

Depositors moves for summary judgment dismissing Home Depot's crossclaims for defense and indemnity. (Docs. 153, 221). Depositors marshals a two-part argument in support: (1) Louisiana's anti-indemnity statute for construction contracts, LA. REV. STAT. § 9:2780.1 ("Construction Anti-Indemnity Act"), applies to the MSA and voids any duty to defend or indemnify Home Depot, except for Home Depot's liability caused by the fault of Commercial Coolants; and (2) Home Depot cannot have liability caused by the fault of Commercial Coolants. (Docs. 153-6, p. 1; 221-6, p. 1). Home Depot opposes. (Docs. 169, 264).

Home Depot argues that the Construction Anti-Indemnity Act does not apply to the MSA, and that Depositors owes it a defense under the policy's blanket

---

[3] Home Depot notes that the MSA contains a choice-of-law provision that purports to require the application of Georgia law. (Doc. 169, p. 3). Home Depot concedes, however, that the laws of Georgia and Louisiana do not conflict. (*Id.*).

7

additional-insured endorsement.[4] (Docs. 169, p. 3; 264, p. 5). And Home Depot argues that Depositors must defend it from Entergy's and Plaintiff's claims because (1) the MSA is a "valid and legally enforceable" contract that requires Commercial Coolants to add Home Depot as an additional insured, and (2) Plaintiffs and Entergy have sued Home Depot alleging "bodily injury" or "property damage" that was "caused, in whole or in part, by" Commercial Coolants' work on the HVAC installation project. (Doc. 232-1, p. 6).

### 1. Construction Anti-Indemnity Act

The Construction Anti-Indemnity Act limits indemnity and insurance-procurement obligations tied to "construction contracts." LA. REV. STAT. § 9:2780.1. A "construction contract" includes "any agreement for the design, construction, alteration, renovation, repair or maintenance of a building[.]" LA. REV. STAT. § 9:2780.1(2)(b).[5] The Construction Anti-Indemnity Act voids two types of provisions relevant here. *See* LA. REV. STAT. § 9:2780.1(B)-(C).

The first type of provision is one that has the effect of indemnifying an indemnitee from liability for damage caused by the indemnitee's negligence. LA. REV. STAT. § 9:2780.1(B). And the second type of provision is one that purports to require an indemnitor to obtain liability insurance covering the indemnitee from liability for damage resulting from the indemnitee's negligence. LA. REV. STAT. § 9:2780.1(C).

---

[4] The parties focus on the blanket additional-insured endorsement rather than the contractors additional-insured endorsement, so the Court does the same.

[5] It is undisputed that the MSA is a "construction contract" under the Construction Anti-Indemnity Act. *See* LA. REV. STAT. § 9:2780.1(2)(b)

8

Invoking the Construction Anti-Indemnity Act, Depositors argues that it owes defense or indemnity to Home Depot in only one circumstance: if a party files a pleading seeking to impose liability on Home Depot for Commercial Coolants' fault. (Docs. 153). Because no party has done so, and because no party can recover against Home Depot for Commercial Coolants' fault, Depositors contends that it is entitled to summary judgment. (*Id.*).

In response, Home Depot argues that the Construction Anti-Indemnity Act does not apply. (Doc. 169 at pp. 3-4). It offers two reasons in support. (*Id.*). First, the MSA was confected in 2010, and the Construction Anti-Indemnity Act does not apply to contracts confected before January 1, 2011. (*Id.* at p. 4). Second, the MSA does not contain language requiring Commercial Coolants to indemnify Home Depot for Home Depot's negligence. (*Id.* at p. 3). The Court turns first to Home Depot's first argument.

i. **Retroactive Date**

The Construction Anti-Indemnity Act does not apply to prohibited clauses in construction contracts confected before January 1, 2011.[6] LA. REV. STAT. § 9:2780.1(F). Home Depot and Commercial Coolants entered into the MSA in August 2010. (Docs. 221-7, ¶ 3; 264-1, ¶ 8). But the parties confected the work order setting

---

[6] The parties state—incorrectly—that January 1, 2011 is the "effective date" of the Construction Anti-Indemnity Act. Effective dates and retroactive dates are not the same. An effective date is the date a statute becomes a law. A retroactive date identifies the pre-enactment conduct to which a law applies. The Construction Anti-Indemnity Act's *effective date* is August 1, 2012. Its *retroactive date* is January 1, 2011. *See* LA. REV. STAT. § 9:2780.1.

9

the terms for the HVAC installation project in 2015. (Docs. 221-6, p. 6; 264, p. 6). The parties dispute which date controls.

Depositors argues that the date of the 2015 work order controls because it is the work order—not the MSA—that obligated Commercial Coolants to install the HVAC equipment for Home Depot. (Doc. 153-6). Home Depot counters that the date of the MSA controls because the MSA contains a provision that incorporates future work orders into it. (Doc. 169, p. 5).

The MSA sets out general terms that *would* govern the relationship between Home Depot and Commercial Coolants *if* Home Depot chose to enlist Commercial Coolants. (Doc. 154-1). It creates no stand-alone obligation to perform. (*Id.*). And it resembles most master service agreements in that it "do[es] not provide for any specific work or services to be performed but refer[s] in general terms of a need by one party for labor, services or materials, and the desire on the part of the other to furnish same." *Livings v. Serv. Truck Lines of Texas, Inc.*, 467 So. 2d 595, 600 (La. Ct. App. 3d Cir. 1985). Because the MSA fails to state the time, place, or nature of Commercial Coolants' required performance, it is not itself a binding contract. *See Page v. Gulf Oil Corp.*, 775 F.2d 1311, 1315 (5th Cir. 1985) (holding that a master service agreement was not a contract because it failed to state the time, place, or type of performance required). Rather, the MSA and the 2015 work order combine to form the contract. *Domingue v. Ocean Drilling & Expl. Co.*, 923 F.2d 393, 396 (5th Cir. 1991).

Depositors is correct that the 2015 work order—not the 2010 MSA—created Commercial Coolants' obligation to remove and replace 17 rooftop air-conditioning units at the Home Depot store. (Doc. 233-8, p. 1). But that does not mean that the date of the work order controls. If the Louisiana legislature wanted work orders issued after a master service agreement to dictate whether indemnity and insurance-procurement obligations created by the master service agreement are subject to the Construction Anti-Indemnity Act, it would have included the language it used in the Oilfield Anti-Indemnity Act. *See* LA. REV. STAT. § 9:2780(I).[7] The Court declines Depositors' invitation to *assume* that the Louisiana legislature intended to incorporate into the Construction Anti-Indemnity Act the same clarification it incorporated into the text of the Oilfield Anti-Indemnity Act. *See Iselin v. United States*, 270 U.S. 245, 251 (1926) ("To supply omissions transcends the judicial function."). In fact, the Court is statutorily barred from doing so:

> The provisions of this Section are not intended to, nor shall they be judicially interpreted, to alter, add to, subtract from, amend, overlap, or affect the provisions of R.S. 9:2780 or R.S. 38:2195.

LA. REV. STAT. § 9:2780.1(E).

The Oilfield Anti-Indemnity Act contains a sub-section stating that it applies to master service agreements creating indemnity obligations incorporated into future work orders. *See* LA. REV. STAT. § 9:2780(I). The Construction Anti-Indemnity Act

---

[7] The Oilfield Anti-Indemnity Act clarifies that it applies "to certain provisions contained, in collateral to or affecting agreements in connection with the activities listed in Subsection C which are designed to provide indemnity to the indemnitee for all work performed between the indemnitor and the indemnitee in the future." LA. REV. STAT. § 9:2780(I).

11

does not. LA. REV. STAT. § 9:2780.1. So the Court finds unpersuasive the Oilfield Anti-Indemnity Act opinion, *Moser v. Aminoil, U.S.A., Inc.*, 618 F. Supp. 774 (W.D. La. 1985), Depositors offers in support of its argument that the date of the 2015 work order controls.[8] (Doc. 153-6, p. 7).

The MSA contracting date—2010—controls. The 2015 work order is both incorporated in and subject to the MSA. (Doc. 154-1, pp. 1, 6). And although the 2015 work order created Commercial Coolants' obligation to perform, *i.e.*, to remove and replace 17 rooftop air-conditioning units at the Home Depot store, the 2010 MSA governed that performance and created Commercial Coolants' indemnity and insurance-procurement obligations. (*Id.*). Because the parties confected the MSA in 2010, and the Construction Anti-Indemnity Act does not apply to prohibited clauses in construction contracts confected before January 1, 2011, the Construction Anti-Indemnity Act does not apply to the indemnity and insurance-procurement provisions in the MSA. The Court therefore DENIES Depositors' Motions for Summary Judgment (Docs. 153, 221) insofar as they seeks dismissal of Home Depot's claims under the Construction Anti-Indemnity Act.

---

[8] Depositors does not argue that this interpretation of the Construction Anti-Indemnity Act produces "absurd consequences." *See* LA. CIV. CODE art. 9. Thus, the Court declines to evaluate the wisdom of the Louisiana legislature's decision to omit from the Construction Anti-Indemnity Act a subsection it specifically included in the Oilfield Anti-Indemnity Act. *See, e.g., Richards v. United States*, 369 U.S. 1, 10 (1962).

## 2. Additional-Insured Endorsements

Alternatively, Depositors asks the Court to enter summary judgment in its favor because its additional-insured endorsements do not cover Entergy's and Plaintiffs' claims against Home Depot. (Doc. 153-6, p. 12). Depositors argues that its blanket additional-insured endorsement limits coverage to Home Depot's vicarious liability for Commercial Coolants' fault. (*Id.*). And because Home Depot cannot have vicarious liability for Commercial Coolants' fault, Depositors reasons, its blanket additional-insured endorsement does not cover the Plaintiffs' and Entergy's claims against Home Depot. (*Id.* at p. 16).

Depositors' blanket additional-insured endorsement limits coverage to "liability for 'bodily injury' or 'property damage' caused, in whole or in part, by 'your work' for the additional insured which is the subject of the written contract or written agreement." (Docs. 221-1, p. 58; 232-8, p. 58). Depositors interprets this endorsement to limit Home Depot's additional-insured coverage to Home Depot's vicarious liability for Commercial Coolants' fault.[9] (Doc. 153-6, p. 16). The Court is unpersuaded.

---

[9] Depositors cites several opinions that it contends support its interpretation. (Doc. 153-6, pp. 17-18). Three of the opinions analyze additional-insured provisions with different language. *See Maldonado v. Kiewit Louisiana Co.*, 2013-0757 (La. Ct. App. 1st Cir. 3/24/14); 146 So. 3d 210; *Miller v. Superior Shipyard and Fabrication, Inc.*, 2001-2907 (La. Ct. App. 1st Cir. 8/20/03); 859 So. 2d 159; *Shell Chemical L.P. v. Discover Prop. & Cas. Co.*, No. 2009-cv-2583, 2010 WL 1338068 (S.D. Tex. Mar. 29, 2010). Another cited opinion, *Pellegrin v. Ansley Place Apartments*, No. 11-cv-289, 2012 WL 831468 (E.D. La. Mar. 12, 2012), analyzes similar policy language, but fails to persuade. The court in *Pellegrin* ruled that an additional-insured endorsement provided coverage for the alleged liability of the additional insured for the fault of the named insured. *Id.* at *4. It did not rule, as Depositors asserts, that coverage was strictly limited to vicarious liability. *Id.*

First, Depositors' interpretation requires the Court to read into the policy a limit on coverage that is not in the policy's text. Nothing in the text of the blanket additional-insured endorsement limits coverage to Home Depot's vicarious liability for Commercial Coolants' fault. (Docs. 221-1, p. 58; 232-8, p. 58). If Depositors intended to limit coverage to vicarious liability, it could have used language reflecting that intent. *See McIntosh v. Scottsdale Ins. Co.*, 992 F.2d 251, 255 (10th Cir. 1993).

Second, Depositors' interpretation discounts the "caused, in whole or in part, by" language in the endorsement. That language clashes with an interpretation that equates "liability" with "vicarious liability" because vicarious liability is an all or nothing proposition: Home Depot cannot have *partial* vicarious liability for Commercial Coolants' work. *See, e.g., Am. Guar. and Liab. Ins. Co. v. Norfolk So. Rwy. Co.*, 278 F. Supp. 3d 1025, 1042-43 (E.D. Tenn. 2017) (rejecting insurer's argument that the phrase "liability caused in whole or in part by the named insured" limited additional-insured coverage to the additional insured's vicarious liability for the named insured's conduct); *First Mercury Ins. Co. v. Shawmut Woodworking & Supply, Inc.*, 48 F. Supp. 3d 158, 172 (D. Conn. 2014), *aff'd by* 660 F. App'x 30 (2d Cir. 2016) (same); *Am. Empire Surplus Lines Ins. Co. v. Crum & Forster Specialty Ins. Co.*, No. CIV. H-06-0004, 2006 WL 1441854, at *7 (S.D. Tex. May 23, 2006) (same).

The better reading of the blanket additional-insured endorsement is that it extends additional-insured coverage to Home Depot for Home Depot's alleged liability for "bodily injury" or "property damage" caused, in part, by Commercial Coolants' work for Home Depot under the MSA. The Court rejects Depositors' cramped

14

interpretation of the additional-insured endorsement and therefore DENIES Depositors' Motions for Summary Judgment. (Docs. 153, 221).

### B. Home Depot's Motion for Summary Judgment

Home Depot moves for summary judgment on its claim that Depositors owes it a defense under Depositors' policy with Commercial Coolants. (Doc. 232). Depositors opposes. (Doc. 266).

In its opposition, Depositors argues that Home Depot is not entitled to a defense because the Construction Anti-Indemnity Act voids the insurance-procurement provision in the MSA and because the additional-insured endorsements in Depositors' policies limit Home Depot's coverage to Home Depot's alleged liability for Commercial Coolants' fault. (Doc. 266, pp. 1-2). The Court rejected the legal basis for both arguments in its discussion of Depositors' Motions for Summary Judgment. (*See* § IV(A)(1) *supra*). So the Court turns to the additional-insured coverage analysis, asking (1) whether Home Depot is an additional-insured, and if so, (2) whether the allegations of Entergy's Crossclaim or Plaintiff's Complaints triggered Depositors' duty to defend Home Depot.

#### 1. Additional-Insured Endorsement

Home Depot has the burden of proving that it is entitled to coverage as an additional insured under the blanket additional-insured endorsement in Depositors' policy with Commercial Coolants. *See Tunstall v. Stierwald*, 201-1765, p. 6 (La. 2/26/02); 809 So. 2d 916, 921. To qualify as an additional insured, Home Depot must

interpretation of the additional-insured endorsement and therefore DENIES Depositors' Motions for Summary Judgment. (Docs. 153, 221).

### B. Home Depot's Motion for Summary Judgment

Home Depot moves for summary judgment on its claim that Depositors owes it a defense under Depositors' policy with Commercial Coolants. (Doc. 232). Depositors opposes. (Doc. 266).

In its opposition, Depositors argues that Home Depot is not entitled to a defense because the Construction Anti-Indemnity Act voids the insurance-procurement provision in the MSA and because the additional-insured endorsements in Depositors' policies limit Home Depot's coverage to Home Depot's alleged liability for Commercial Coolants' fault. (Doc. 266, pp. 1-2). The Court rejected the legal basis for both arguments in its discussion of Depositors' Motions for Summary Judgment. (*See* § IV(A)(1) *supra*). So the Court turns to the additional-insured coverage analysis, asking (1) whether Home Depot is an additional-insured, and if so, (2) whether the allegations of Entergy's Crossclaim or Plaintiff's Complaints triggered Depositors' duty to defend Home Depot.

#### 1. Additional-Insured Endorsement

Home Depot has the burden of proving that it is entitled to coverage as an additional insured under the blanket additional-insured endorsement in Depositors' policy with Commercial Coolants. *See Tunstall v. Stierwald*, 201-1765, p. 6 (La. 2/26/02); 809 So. 2d 916, 921. To qualify as an additional insured, Home Depot must

show that Commercial Coolants was required to add Home Depot as an additional insured under a "valid and legally enforceable . . . written contract or written agreement." (Docs. 221-1, p. 58; 232-8, p. 58).

The MSA is a "valid and legally enforceable . . . written contract" that required Commercial Coolants to add Home Depot as an additional insured. (*Id.*). Home Depot is thus an additional insured under the policy's blanket additional-insured endorsement. (Docs. 221-1, p. 58; 232-8, p. 58).

### 2. Duty to Defend

The Court applies the "eight corners rule" to decide if Depositors owes Home Depot a defense. *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir. 2009). That rule requires Depositors to defend Home Depot "unless the allegations in the [pleadings], as applied to the policy, unambiguously preclude coverage." *Id.* at 872. Invoking the "eight corners rule," Home Depot asserts that Depositors' duty to defend arose on December 28, 2016, when Home Depot tendered a defense to Depositors based on the allegations of Plaintiffs' Original Complaint and Entergy's Original Crossclaim. (Doc. 232-1, p. 10). The Court disagrees.

Plaintiffs' Original Complaint alleges no facts from which Depositors' duty to defend Home Depot could arise. (Doc. 1-2). Nor does Entergy's Crossclaim. (Doc. 9). Because neither pleading alleges that Home Depot is liable for injury "caused, in whole or in part, by" Commercial Coolants' fault, as is required to trigger additional-insured coverage under the policy, Home Depot was not entitled to a defense from Depositors at the time it requested one—on December 28, 2016. (Doc. 232-9).

Depositors' duty to defend Home Depot instead arose about three months later, when Entergy filed an Amended Third-Party Demand alleging that Commercial Coolants' negligence caused Steven Moore's injuries. (Doc. 37, ¶ 11). Until that time, no party had filed a pleading alleging that Home Depot was liable "for 'bodily injury' or 'property damage' caused, in whole or in part, by" Commercial Coolants' work for Home Depot under the MSA. (Docs. 221-1, p. 58; 232-8, p. 58).[10]

On the duty-to-defend issue, Home Depot has shown that there is no genuine dispute as to any material fact, and that it is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a). Home Depot is entitled to its costs and attorney's fees from April 5, 2017—the date Entergy filed a Third-Party Demand asserting a covered claim against Home Depot—forward. *See Coleman v. Sch. Bd. of Richland Parish*, 418 F.3d 511, 525 (5th Cir. 2005).

---

[10] Plaintiffs' amended complaint also contains allegations within Home Depot's additional-insured coverage. (Doc. 50). For example, Plaintiffs allege that Steven Moore's injury was caused by Commercial Coolants' "fail[ure] to provide plaintiff a safe place to prepare and unload the HVAC system." (Doc. 50, ¶ 11-4).

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that Home Depot USA, Inc.'s **Motion for Summary Judgment (Doc. 232)** is **GRANTED**. Depositors Insurance Company's Crossclaim against Home Depot USA, Inc. is **DISMISSED**.

**IT IS FURTHER ORDERED** that Depositors Insurance Company's **Motions for Summary Judgment (Docs. 153, 221)** are **DENIED**.

**IT IS FURTHER ORDERED** that Home Depot USA, Inc.'s **Motion for Oral Argument (Doc. 171)** is **DENIED**.

Baton Rouge, Louisiana, this 15th day of October, 2018.

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**